UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAZMI A. YOUSEF, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| | ) | Case No: 1:18-cv-01103 |
| BANK OF AMERICA, N.A., v. | ) | |
| BAYVIEW LOAN SERVICING, LLC, | ) | JURY TRIAL DEMANDED |
| and WIRBICKI LAW GROUP, LLC, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff NAZMI A. YOUSEF, by the undersigned attorneys, brings this complaint against Defendants BANK OF AMERICA, N.A., BAYVIEW LOAN SERVICING, LLC, and WIRBICKI LAW GROUP, LLC (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages for breach of contract and for violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act ("FDCPA").

2. All of the claims stated herein stem from Defendants' wrongful servicing and debt collection activities related to Yousef's home mortgage loan.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred by 28 U.S.C. §§1331, 1337, 12 U.S.C. §2614 (RESPA), and 15 U.S.C. §1692k (FDCPA), as the action arises under the laws of the United States. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391 as the subject property is in this District and the events occurred in this District.

1

## PARTIES

5. Plaintiff Nazmi A. Yousef (hereinafter "Yousef") is a natural person who resides at 8200 S. Luna Ave., Burbank, IL 60459 ("subject property"). The subject property was purchased as Yousef's family residence in 2005.

### A. Defendant Bank of America, N.A.

6. Defendant BANK OF AMERICA, N.A. ("BANA") is a Delaware corporation and a nationally chartered banking association with its principal place of business located at 100 N. Tryon Street, Charlotte, North Carolina.

7. BANA services millions of mortgage loans across the country, including in the state of Illinois.

### B. Bayview Loan Servicing, LLC

8. Defendant BAYVIEW LOAN SERVICING, LLC is a Delaware limited liability company with its principal business located at 4425 Ponce De Leon Blvd., Coral Gables, Florida.

9. Bayview services mortgage loans and collects debts on behalf of third-party debt creditors and other debt collectors across the country, including in the state of Illinois.

10. The principal purpose of Bayview's business is the collection of debts.

### C. Wirbicki Law Group, LLC

11. Defendant WIRBICKI LAW GROUP, LLC ("Wirbicki") is a debt collection law firm authorized to do business in the state of Illinois.

12. Wirbicki is in the business of collecting debts from Illinois residents on behalf of third-party creditors, servicers, and debt buyers in the state of Illinois.

## FACTS SUPPORTING CAUSES OF ACTION

13. In January 2005, Yousef executed a mortgage loan in favor of Green Point Mortgage for the purchase of the subject property as his family home.

14. In January 2008, Yousef experienced financial difficulties and defaulted on the monthly mortgage payment.

15. In June 2008, Bank of New York Mellon, as Trustee, for CWALT 2005-06CB filed for foreclosure against Yousef and the subject property in Cook County, Illinois. *See Bank of New York Melon, as Trustee v. Nazmi A. Yousef, et al.*, 2008 CH 21861 (Cook County).

16. After the foreclosure complaint was filed, servicing rights on the subject loan were transferred to Defendant Bayview.

17. At that time, Yousef sought a loan modification from Bayview (the loan servicer) to cure the payment default and to resume monthly payments.

18. On October 15, 2014, Bayview offered Yousef a trial loan modification that required three monthly payments of $1,989.76 for November 2014, December 2014, and January 2015.

19. Yousef signed the trial modification and proceeded to make all three required monthly trial payments on time and in full.

### A. Permanent Loan Modification

20. On January 6, 2015, having successfully completed the three month trial modification, Bayview offered Yousef a permanent loan modification. *See* **Exhibit A** attached, the permanent loan modification agreement.

21. The permanent modification added all past due amounts into the modified principal balance (including all escrow advances) totaling $170,533.62. *See* **Exhibit A** ¶1(A).

22. In conjunction with the existing principal balance, the new principal balance in the loan modification increased to $405,836.00. *Id.*

23. The modified monthly payment was $1,989.76 for principal, interest, taxes, and insurance. The first payment was due for February 1, 2015.

24. The $1,989.76 monthly payment included $1,081.09 for principal and interest, and $908.67 for escrow (real estate taxes and insurance). *Id.*

25. Yousef executed the permanent loan modification and proceeded to make the monthly payments beginning for February 2015. The mortgage loan was permanently modified. *Id.*

26. Yousef proceeded to make all required monthly loan modification payments to Bayview.

27. In fact, Yousef overpaid the monthly modification payments by tendering $2,000.00 to Bayview each month.

28. From February 2015 to August 2016, every payment was accepted by Bayview, seemingly without issue.

29. On July 28, 2016, Bayview sent Yousef a notice of servicing transfer, informing Yousef that servicing rights would transfer from Bayview to BANA on August 16, 2016.

30. On July 28, 2016, Bayview sent Yousef a monthly mortgage statement. The statement confirmed that Yousef was current with his monthly payment obligations and fully paid through August 2016 (Yousef made the August 2016 monthly payment on July 27, 2016).

31. There were no outstanding fees or charges owed, and the next payment was due for September 1, 2016.

### B. August 16, 2016 Servicing Transfer to Defendant BANA

32. Immediately upon the servicing transfer from Bayview, BANA treated the loan as if it was in "default."

33. On September 28, 2016, BANA sent Yousef a notice of monthly payment increase (of approximately $1,675) beginning November 1, 2016.

34. The payment increase was based upon BANA's claimed "escrow shortage" in the amount of "$14,454.19."

35. BANA attempted to "spread" the "$14,454.19 escrow shortage" over 12 months, increasing Yousef's monthly payment from $1,989.76 to $3,663.92. *Id.*

36. The amount for principal and interest ($1,081.09) did not change, but the monthly allocation for escrow increased by $1,674.16 (from $908.67 to $2,582.83). *Id.*

37. Yousef continued to make his actual loan modification payment ($1,989.76) to BANA each month in the amount in the amount of $2,000.00.

38. BANA proceeded to send Yousef correspondence seeking to collect the increased payment of $3,663.92 each month. BANA claimed a default and threatened foreclosure if Yousef did not make the increased payment.

### C. RESPA Notice of Error and Request for Information to BANA

39. On November 21, 2016, Yousef sent BANA a RESPA Notice of Error and Request for Information ("BANA RFI") seeking information related to the payment increase, the alleged escrow shortage, and to dispute BANA's servicing of the mortgage loan account.

40. Specifically, Yousef notified BANA that he had made all of his payments on time and that BANA failed to account for his payments, improperly placing his account in default. Yousef

requested that BANA correct the servicing errors, conduct an investigation, and make corrections to Yousef's account.

41. Yousef also requested, *inter alia*, copies of the payment/transactional history, escrow history, and any correspondence BANA claimed to have sent to Yousef. *Id*.

42. BANA did not respond to Yousef's RFI/NOE at any time or provide the requested documentation.

43. On December 16, 2016, BANA sent Yousef a Notice of Intent to Accelerate, claiming a substantial default and threatening acceleration of the loan, foreclosure, and sale of Yousef's family home if $7,327.84 was not paid by January 25, 2017.

44. Also on December 16, 2016, BANA sent Yousef a mortgage statement claiming that Yousef was in default and owed $8,991.76.

45. These correspondences were sent directly Yousef, even though BANA knew that Yousef was represented by an attorney.

46. Yousef continued to make – and BANA continued to accept – the true mortgage payment ($1,989.76) every month in the amount of $2,000.00

47. However, BANA stole Yousef's payments and charged Yousef for "default" related fees and charges as if payments were not made and accepted.

48. Yousef made all required monthly payments for principal, interest, and escrow in full.

49. BANA accepted seven monthly payments from Yousef totaling $14,000.00 during the time BANA serviced mortgage account, with approximately $7,000.00 allocated to escrow during that time period.

50. However, BANA sent Yousef a "Statement of Escrow Account Activity," claiming thant only "$2,582.83 in total was paid [for Yousef's] escrow account" from "November 2016 through April 2017."

51. Further, BANA serviced the loan from August 16, 2016 through March 16, 2017, not November 2016 to April 2017 as claimed in the letter.

### D. Servicing Transfer to Defendant Bayview

52. On February 24, 2017, BANA sent Yousef a notice of servicing transfer informing Yousef that servicing rights would transfer from BANA to Bayview on March 16, 2017.

53. BANA transferred servicing rights to the loan back to Bayview, leaving a "default" of over $14,000.00.

54. Bayview immediately treated the loan as past due and in default.

55. Bayview claimed that Yousef was in default, threatened acceleration, foreclosure, and sale of Yousef's family home if $14,024.52 was not tendered in 30 days.

56. On May 16, 2017, Bayview sent Yousef a statement claiming that he was in default, was due for the January 2017 installment, and demanded $22,035.52 to bring the loan current.

### E. RESPA Notice of Error and Request

57. On June 5, 2017, Yousef sent Bayview a RESPA Notice of Error and Request for Information ("Bayview RFI"), seeking information related to the substantial payment increase, the alleged escrow shortage, and to dispute Bayview's servicing of the loan account.

58. Yousef notified Bayview that all monthly mortgage payments were made, that Bayview failed to properly account for his payments, and that Yousef was neither in default nor owed any escrow shortage. Yousef requested that Bayview correct the servicing errors identified, conduct an investigation, and make corrections to Yousef's account.

59. Yousef requested, *inter alia*, copies of the complete loan file, including the escrow account history, the payment/transactional history, and any notices or correspondence sent to Yousef. *Id*. Yousef attached all relevant documents to the Bayview RFI/NOE.

60. Bayview received Yousef's NOE and RFI on June 12, 2017.

61. Bayview sent a response, but did not conduct an investigation, address Yousef's specific disputes, or correct the account.

62. Bayview did not perform any investigation, provide any explanation, make any corrections to the account, or provide the information requested by Yousef.

### F. Dispute Letter & Foreclosure

63. On July 28, 2017, Bayview, through its attorneys Wirbicki (Bayviews's foreclosure attorneys) sent Yousef a notice of foreclosure demanding $387,662.97 and threatening foreclosure if that amount was not paid in 30 days.

64. The notice identified Bank of New York Mellon f/k/a The Bank of New York as Trustee (CWALT 2005-06CB) as the owner of the subject loan.

65. On August 10, 2017, Yousef (through the undersigned attorneys) sent a dispute letter to Wirbicki requesting verification of the debt.

66. Wirbicki acknowledged receipt of Yousef's dispute letter.

67. However, Wirbicki did not respond to Yousef's August 10, 2017 dispute letter or verify the debt.

68. Instead, on September 12, 2017, Wirbicki filed a foreclosure complaint against Yousef and the subject property in the case known as *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee (CWALT 2005-06CB) v. Yousef, et al.*, 17 CH 12343 (Cook County).

69. The foreclosure complaint alleged a default date of January 1, 2017 and an unpaid balance of $340,501.86.

### G. Payment History/Accounting

70. From February 2015 through August 2017, Yousef has paid all amount due under the loan modification, including for taxes and insurance, totaling $62,110.24.

71. From February 2015 through August 2017, $33,513.79 was owed for principal and interest ($1,081.09 x 31 months).

72. From February 2015 through August 2017, Yousef paid $28,596.45 ($62,110.24-$33,513.79) for escrow.

73. Including the three trial payments of $1,989.76 (November 2014, December 2014, and January 2015), an additional ~$3,200 was paid for principal and interest and ~$2,700 for escrow.

74. Notwithstanding Defendants' claims of a substantial default, Yousef paid all amounts due for principal, interest, and escrow.

75. Thereafter, Bayview began rejecting Yousef's proper mortgage payments each month.

9

76. Yousef has since set up a "side account" where all monthly payments due (or rejected) on the mortgage account are "escrowed" for purposes of honoring the loan modification contract.

### H. Damages

77. Yousef has suffered damages proximately caused by Defendants' conduct, including:

   i. Emotional distress, stress, anxiety, and pain and suffering;
   ii. Placing his life on hold to resolve his mortgage issues with Bayview and BANA;
   iii. Loss of payments made for the improper escrow increase;
   iv. Threats of foreclosure and exorbitant amounts for a payment "default;"
   v. Loss of time and resources to dispute the wrongful servicing, make oral and written disputes, pay postage, and enforce the terms of the loan modification;
   vi. Attorney fees and postage to send the BANA and Bayview NOE/RFI to dispute the payment increase;
   vii. Interest, default charges, escrow charges, and fees that have been wrongfully added to Yousef's loan balance;
   viii. Public humiliation and loss of credit worthiness; and
   ix. Attorney's fees and costs to defend the improperly filed state foreclosure lawsuit.

78. Defendants' actions were the proximate cause of damages to Yousef that include those set forth above, the misapplication of payments, Yousef living in a perpetual state of "default," and having to pay more for escrow than is actually owed.

## COUNT I – BREACH OF CONTRACT
### (AGAINST BANA AND BAYVIEW)

79. Yousef repeats and realleges all prior paragraphs as if fully set forth herein.

80. Yousef has a valid and enforceable loan modification contract with BANA and Bayview (the "servicers") as the servicers of the subject loan.

81. Yousef fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

82. The Servicers breached the loan modification contract by:

    i. misapplying Yousef's principal, interest, and escrow payments;
    ii. rejecting Yousef's payments;
    iii. threatening a foreclosure when Yousef was contractually current with his monthly payments;
    iv. treating the loan as if it were "default" when Yousef was contractually current;
    v. failing to honor the existence of the payment terms of the loan modification;
    vi. assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modification;
    vii. charging Yousef's escrow account above the limits allowed by the mortgage contract or the 1/6th cushion under RESPA;
    viii. imposing an "escrow shortage" when no shortage existed;
    ix. failing to provide Yousef with accurate account information or accurately respond to Yousef's correspondence and other disputes; and
    x. failing to conduct its affairs in good faith.

83. Yousef suffered damages as set forth in paragraphs 77 and 78 that were proximately caused by the breach of contract.

WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

   a. find that Defendants materially breached the mortgage contract;
   b. award Yousef his actual damages to be proven at trial; and
   c. award any other relief this Honorable Court deems equitable and just.

## COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST BAYVIEW)

84. Yousef restates and realleges all prior paragraphs as if fully set forth herein.

85. Yousef is a consumer under 15 U.S.C. § 1692a(3), as the subject loan was extended on Yousef's primary residence and was strictly for personal, family, and household purposes.

86. The subject loan and the unauthorized fees qualify as "debts" under § 1692a(5).

### A. Bayview is a Debt Collector

87. Bayview qualifies as a "debt collector" under § 1692a(6) because (a) it regularly collects debts and uses the mail or telephones to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, (c) it regularly collect debts owed to another party, and (d) it treated the subject loan in default when it acquired servicing rights.

88. The principal purpose of Bayview's business is the collection of debts.

89. Bayview regularly collects consumer debts on behalf of third-party owners and creditors, through the use of the mails, telephones, and instrumentalities of interstate commerce.

90. On March 16, 2017, Bayview obtained servicing rights to the subject loan.

91. At the time of the transfer, Bayview treated the subject debt as if it were in default.

92. At the time of the transfer through today, Bayview was servicing the subject debt on behalf of the third party "Bank of New York Mellon FKA The Bank of New York as Trustee (CWALT 2005-06CB)."

### B. Violation of §§ 1692e, e(2), e(5), & e(10), and §§ 1692f & f(1)

93. In its attempts to collect a debt from Yousef, Bayview employed false, deceptive, misleading, unfair and unconscionable conduct by:

   i. misrepresenting the character, amount, and legal status of the subject loan in statements and notices, including a "default" amount over $22,000.00;
   ii. misrepresenting and assessing wrongful "default" related fees and attempting to collect those amounts – in contravention of the loan modification – when collection of those amounts was not authorized by contract or law;
   iii. threatening default and foreclosure, and seeking to collect an "escrow shortage" at a time when Bayview was not authorized to do so by contract or law;
   iv. threatening and asserting a right to accelerate the debt and proceed with foreclosure when no such right existed; and
   v. falsely promising Yousef that it would implement the loan modification; and
   vi. refusing to accurately communicate with Yousef or respond to his inquiries.

94. Yousef suffered damages proximately caused by Bayview's violations of the FDCPA, including those set forth in paragraphs 77 to 78 above.

   WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

   a. enter judgment in their favor and against Bayview;
   b. award Yousef statutory and actual damages in an amount determined at trial;
   c. award Yousef costs and reasonable attorney fees under 15 U.S.C. §1692k; and
   d. award any other relief this Honorable Court deems equitable and just.

## COUNT III – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST WIRBICKI)

95. Yousef restates and realleges all prior paragraphs as if fully set forth herein.

### A. Wirbicki is a Debt Collector

96. Wirbicki qualifies as a "debt collector" under § 1692a(6) because (a) it regularly collects debts and uses the mail or telephones to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, (c) it regularly collect debts owed to another party, and (d) it treated the subject loan in default when it acquired servicing rights.

97. The principal purpose of Wirbicki's business is the collection of debts.

98. Wirbicki regularly collects consumer debts on behalf of third-party creditors, through the use of the mails, telephones, and instrumentalities of interstate commerce.

99. Wirbicki regularly collects consumer debts on behalf of third-party owners and creditors, through the use of the mails, telephones, and instrumentalities of interstate commerce.

100. Wirbicki is seeking to collect the subject debt on behalf of the third party "Bank of New York Mellon FKA The Bank of New York as Trustee (CWALT 2005-06CB)" for purposes of the state foreclosure action.

101. At all times, Wirbicki treated the subject debt as if it were in default.

### B. Violation of §§ 1692e, e(2), e(5), & e(10), and §§ 1692f & f(1)

102. In its attempts to collect a debt from Yousef, Wirbicki employed false, deceptive, misleading, unfair and unconscionable conduct by:

   i. Using false representations and deceptive means to collect or attempt to collect the subject loan and foreclosure of the property (§ 1692e);
   ii. Falsely representing the character, amount, and legal status of the subject loan and mortgage (§ 1692e(2));
   iii. Filing foreclosure when foreclosure could not legally occur (§ 1692e(5));
   iv. Falsely threatening a foreclosure sale of the property (§ 1692e(8));

    v. Improperly adding legal fees, foreclosure charges, and attorney's fees (including estimated fees) to Yousef's account (§§ 1692e(8), 1692e(10), 1692f(1)); and

    vi. Using unfair and unconscionable means to attempt to collect a debt when collection was not authorized by law (§ 1692f & f(1)).

103. Wirbicki's claims that it could foreclose on Yousef and the subject property were misstatements of both fact and law.

104. Wirbicki's conduct was employed to induce Yousef to pay the amount claimed or be subject to foreclosure of their family home.

### C. <u>Violation of § 1692g(b)</u>

105. On July 28, 2017, Wirbicki sent its initial communication and debt validation notice to Yousef pursuant to FDCPA § 1692g(b) stating that Yousef had 30-days to dispute the debt.

106. On August 10, 2017, Yousef sent a dispute letter to Wirbicki via fax and USPS.

107. On August 10, 2017, Wirbicki acknowledged receipt of Yousef's dispute letter.

108. Wirbicki never verified the debt in response to Yousef' dispute letter.

109. However, Wirbicki proceed with debt collection activity.

### D. <u>Violation of § 1692c</u>

110. After Wirbicki was notified that Yousef was represented by the undersigned counsel on Auguest 10, 2017, Wirbicki continued to communicate with Yousef directly for the purpose of debt collection, in violation of § 1692c

111. Yousef suffered damages proximately caused by Bayview's violations of the FDCPA, including those set forth in paragraphs 77 to 78 above.

    WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

    e. enter judgment in their favor and against Wirbicki;

    f. award Yousef statutory and actual damages in an amount determined at trial;

    g. award Yousef costs and reasonable attorney fees under 15 U.S.C. §1692k; and

    h. award any other relief this Honorable Court deems equitable and just.

## COUNT IV – VIOLATION OF ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (AGAINST BANA AND BAYVIEW)

112. Yousef restates and realleges all prior paragraphs as if fully set forth herein.

113. The Servicers violated ICFA by employing unfair and deceptive acts and practices when dealing with Yousef.

114. Yousef is a "consumer" and "person." *See* 810 ILCS 505/1, 505/2.

115. The acts and practices occurred in the course of conduct involving trade or commerce.

116. The Servicers made outright unfair and deceptive representations to Yousef as to the status the modification and escrow, amounts owed, the status of the loan, how Yousef *should* act, and their actual treatment of his account internally compared to its representations to Yousef.

117. It was unfair and deceptive for the Servicers to:

   i. ignore the loan modification and Yousef's true account history;
   ii. falsely claim that they could declare the loan in default and file foreclosure, when no such right existed;
   iii. send Yousef notices with false and misleading information, including that Yousef's monthly payments were insufficient to pay principal, interest, and escrow;
   iv. falsely claim that Yousef had an escrow shortage;
   v. fail to independently verify amounts due for escrow upon transfer of the subject loan account; and
   vi. misrepresent "default" related fees and charges on a loan that was not in default.

118. It was unfair for the Servicers to refuse to provide any explanation or basis for its escrow shortage and payment increase.

119. Yousef incorporates herein the unfair and deceptive conduct from Count II above.

   **a. Public Policy, Immoral Actions, and Substantial Injury to Consumers**

120. The Servicers' conduct offends public policy as it demonstrates an industry-wide practice of charging illegal fees and escrow charges to a borrower in order to make a profit,

forcing borrowers to make loan modification payments without properly crediting the payments, misrepresenting material facts, sending conflicting correspondences, falsely threatening foreclosure, with the intention of ultimately benefiting from the higher payments and foreclosure.

121. The Servicers' actions cause substantial injury to consumers generally because:

    i. consumers reasonably expect that loan servicers will communicate with them truthfully and accurately regarding their account;

    ii. consumers reasonably expect that loan servicers will not make false representations or induce payments on false pretenses;

    iii. consumers reasonably expect that, if there is a dispute, loan servicers will make honest efforts to resolve the dispute expeditiously, instead of misrepresenting facts or not responding altogether; and

    iv. consumers reasonably expect that loan servicers will honor and respect laws related to foreclosures against consumers.

122. Additionally, consumers do not expect to be blindsided by a notice of default and foreclosure when their accounts are fully current.

123. Yousef could not avoid these immoral undertakings because the Servicers would not accurately communicate with him. Yousef's inquiries and disputes were never investigated nor adequately answered; the lack of clarity resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of his account.

124. When taken as a whole over the course of a year, the Servicers' conduct was so unethical and unending that Yousef had no choice but to submit.

125. Yousef had no actual control over (a) his loan modification and escrow payments; (b) whether the Servicers would declare the loan in default and threaten foreclosure; (c) the arbitrary collection attempts; (d) the assessment of default fees and costs: (e) how costs and fees were assessed or applied; (f) how the Servicers truly treated the loan internally; and (g) whether what the Servicers represented was truthful.

126. This conduct is part of a pattern and practice of behavior in which the Servicers

17

routinely engage as part of their business model. It is the Servicers' normal business practice to disregard agreements and state and federal laws and regulations, and then misstate the nature of outstanding "debts" and amounts "owed" to consumers for its own pecuniary gain.

### b. Intent, Reliance, and Punitive Damages

127. The Servicers' conduct was willful, malicious, and arbitrary. It was designed to place Yousef's account in a perpetual state of "default," while taking advantage of an emotionally and financially vulnerable borrower trying to save his family home.

128. The Servicers' overall scheme was designed and intended to (a) trick Yousef into making increased payments on the loan modification, (b) induce Yousef to pay tens of thousands of dollars to "reinstate" the loan, and (c) discourage Yousef from continuing to fight for his home and eventually "give up."

129. The Servicers' communications were intentionally confusing, misleading, and designed to keep Yousef in a state of confusion while profiting from his payments, with the ultimate goal of selling his home at a foreclosure auction.

130. Yousef suffered damages as set forth in paragraphs 78 through 79 that were proximately caused by defendants' conduct in violation of the ICFA.

131. An award of punitive damages is appropriate because the Servicers' conduct was outrageous, willful, and wanton, and showed a reckless disregard for the rights of Yousef over the course of several years. Additionally, when Yousef objected, the Servicers attempted to silence him by falsely threatening foreclosure and demanding "reinstatement."

WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

    a. enter judgment in Yousef's favor and against BANA and Bayview;
    b. award Yousef actual and punitive damages in an amount to be determined at trial;
    c. award Yousef costs and reasonable attorney fees under 815 ILCS 505/10a(c).

## COUNT V – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
## (AGAINST BANA AND BAYVIEW)

132. Yousef repeats and realleges all prior paragraphs as if fully set forth herein.

133. The subject loan is a "federally related mortgage" under RESPA and 12 C.F.R. 1024.2.

134. BANA and Bayview both qualify as "servicers" under RESPA § 2605(i)(2) and 12 C.F.R. 1024.2.

### A. Violation of §§ 2605(e)(1)(A), (e)(2), & (k) and 12 C.F.R. 1024.35(e)

135. RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3) require a loan servicer, within 30 days of receipt of an RFI/NOE, to (i) make corrections to the account and provide the borrower a written notice; or (ii) conduct an investigation and provide the borrower a written explanation as to why the servicer believes its servicing is correct; or (iii) conduct an investigation and provide the borrower a written explanation as to why the requested information is not available.

136. Any written response must include the name and telephone number of a representative of the loan servicer who can provide assistance to the borrower.

137. Additionally, a servicer must acknowledge in writing receipt of any NOE/RFI from a borrower with five days. 12 U.S. C. § 2605(e)(1)(A); 12 C.F.R. 1024.35(d).

138. With respect to the RFIs and NOEs sent by Yousef, the Servicers did not acknowledge receipt of or respond to in any fashion, in violation of RESPA § 2605(e)(1)(A); 12 C.F.R. 1024.35(d).

139. With respect to the RFIs and NOEs sent by Yousef, the Servicers (a) did not make corrections to the account, (b) did not conduct a reasonable investigation, and (c) did not respond to Yousef in one of the three methods allowed under RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3).

140. The Servicers did not provide Yousef with a name and phone number of a representative who could provide assistance to Yousef.

141. The Servicers' failure to comply with RESPA is part of a pattern of practice of non-compliance with the provisions of RESPA.

142. Yousef suffered damages proximately caused by the Servicers' conduct of as set forth in paragraphs 77 to 78 above.

143. The Servicers' failure to comply with RESPA is part of a pattern of practice of non-compliance with the provisions of RESPA.

WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

a. grant judgment in Yousef's favor and against BANA and Bayview;

b. award Yousef actual and additional damages pursuant to RESPA § 2605(f);

c. award Yousef reasonable attorney's fees and costs pursuant to RESPA § 2605(f); and

d. award any other relief this Honorable Court deems equitable and just.

**YOUSEF DEMANDS TRIAL BY JURY**

*/s/ Ross M. Zambon*
---------------------------------------------
Ross M. Zambon, #6294149
Zambon Law Ltd.
Sulaiman Law Group, Ltd. (*of Counsel*)
2500 S. Highland Ave., Suite 200
Lombard, IL 60148
*Counsel for Nazmi Yousef*