## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| NAZMI A. YOUSEF, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:18-cv-01103 |
| | ) | |
| BANK OF AMERICA, N.A. , | ) | |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| WIRBICKI LAW GROUP, LLC | ) | |
| Defendants. | ) | |

### DEFENDANT, BAYVIEW LOAN SERVICING, LLC'S,
### ANSWER AND AFFIRMATIVE DEFENSES

Defendant, BAYVIEW LOAN SERVICING, LLC, ("Defendant") by and through their attorneys, James V. Noonan, Solomon Maman and Noonan & Lieberman, Ltd., and for its Answer and Affirmative Defenses to Plaintiff's Complaint state as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this action for damages for breach of contract and for violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act ("FDCPA").

**ANSWER:**     Bayview admits the Complaint purports to state claims for breach of contract, the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), the Real Estate Settlement Procedures Act ("RESPA") and Fair Debt Collection Practices Act (hereinafter "FDCPA"). Bayview denies it breached a contract or engaged in any wrongdoing under the ICFA, RESPA, FDCPA, or that the Plaintiff is entitled to any alleged actual or statutory damages.

2.     All of the claims stated herein stem from Defendants' wrongful servicing and debt collection activities related to Yousef's home mortgage loan.

**ANSWER:**     Bayview denies it breached a contract or engaged in any wrongdoing under the ICFA, RESPA, FDCPA, or that the Plaintiff is entitled to any alleged actual or statutory damages.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction is conferred by 28 U.S.C. §§1331, 1337, 12 U.S.C.

§2614 (RESPA), and 15 U.S.C. § 1692k (FDCPA), as the action arises under the laws of the

United States.   The Court has supplemental jurisdiction over the state law claims under 28

U.S.C. §1367.

**ANSWER:**     Bayview states that Plaintiff's jurisdiction allegation is a legal conclusion which
                is not subject to denial or admission; to the extent an answer is required Bayview
                denies the allegation. Bayview also states that Plaintiff's supplemental jurisdiction
                allegation is a legal conclusion which is not subject to denial or admission; to the
                extent an answer is required Bayview denies the allegation.

4.      Venue is proper in this District pursuant to 28 U.S.C. §1391 as the subject

property is in this District and the events occurred in this District.

**ANSWER:**     Bayview states that Plaintiff's venue allegation is a legal conclusion which is not
                subject to denial or admission; to the extent an answer is required Bayview denies
                the allegation.

## PARTIES

5.      Plaintiff Nazmi A. Yousef (hereinafter "Yousef") is a natural person who resides

at 8200 S. Luna Ave., Burbank, IL 60459 ("subject property").   The subject property was

purchased as Yousef's family residence in 2005.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the
                truth of the allegations in paragraph 5 and, therefore, denies them.

### A. Defendant Bank of America, N.A.

6.      Defendant BANK OF AMERICA, N.A. ("BANA") is a Delaware corporation and

a nationally chartered banking association with its principal place of business located at 100 N.

Tryon Street, Charlotte, North Carolina.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the
                truth of the allegations in paragraph 6 and, therefore, denies them.

7. BANA services millions of mortgage loans across the country, including in the state of Illinois.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and, therefore, denies them.

### B. Bayview Loan Servicing, LLC

8. Defendant BAYVIEW LOAN SERVICING, LLC is a Delaware limited liability company with its principal place of business located at 4425 Ponce De Leon Blvd., Coral Gables, Florida.

**ANSWER:** Bayview admits the allegations in paragraph 8.

9. Bayview services mortgage loans and collects debts on behalf of third-party debt creditors and other debt collectors across the country, including in the state of Illinois.

**ANSWER:** Bayview admits that it is a servicer of mortgage loans. With respect to the remaining allegations in paragraph 9, Bayview states that these are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

10. The principal purpose of Bayview's business is the collection of debts.

**ANSWER:** Bayview states that Plaintiff's allegations in paragraph 10 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

### C. Wirbicki Law Group, LLC

11. Defendant WIRBICKI LAW GROUP, LLC ("Wirbicki") is a debt collection law firm authorized to do business in the state of Illinois.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and, therefore, denies them.

12. Wirbicki is in the business of collecting debts from Illinois residents on behalf of third-party creditors, servicers, and debt buyers in the state of Illinois.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and, therefore, denies them.

## FACTS SUPPORTING CAUSES OF ACTION

13.    In January 2005, Yousef executed a mortgage loan in favor of Green Point Mortgage for the purchase of the subject property as his family home.

**ANSWER:**    Bayview admits that Plaintiff executed a mortgage in January of 2005, but denies the remaining allegations in paragraph 13.

14.    In January 2008, Yousef experienced financial difficulties and defaulted on the monthly mortgage payments.

**ANSWER:**    Bayview admits that Plaintiff defaulted on his mortgage payments; Bayview is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 and, therefore, denies them.

15.    In June 2008, Bank of New York Mellon, as Trustee, for CWALT 2005-06CB filed for foreclosure against Yousef and the subject property in Cook County, Illinois. *See Bank of New York Mellon, as Trustee v. Nazmi A. Yousef, et al*, 2008 CH 21861 (Cook County).

**ANSWER:**    Admit.

16.    After the foreclosure complaint was filed, servicing rights on the subject loan were transferred to Defendant Bayview.

**ANSWER:**    Admit.

17.    At that time, Yousef sought a loan modification from Bayview (the loan servicer) to cure the payment default and to resume monthly payments.

**ANSWER:**    Bayview admits that Plaintiff sought a loan modification from Bayview; but denies the remaining allegations in paragraph 17.

18.    On October 15, 2014, Bayview offered Yousef a trial loan modification that required three monthly payments of $1,989.76 for November 2014, December 2014, and January 2015.

**ANSWER:**    Admit.

19.    Yousef signed the trial modification and proceeded to make all three required monthly trial payments on time and in full.

**ANSWER:**    Admit.

### A. Permanent Loan Modification

20.    On January 6, 2015, having successfully completed the three month trial modification, Bayview offered Yousef a permanent loan modification. *See* **Exhibit A** attached, the permanent loan modification agreement.

**ANSWER:**    Admit.

21.    The permanent modification added all past due amounts into the modified principal balance (including all escrow advances) totaling $170,533.62. *See* **Exhibit A** ¶1(A).

**ANSWER:**    Admit.

22.    In conjunction with the existing principal balance, the new principal balance in the loan modification increased to $405,836.00. *Id.*

**ANSWER:**    Admit.

23.    The modified monthly payment was $1,989.76 for principal, interest, taxes, and insurance. The first payment was due for February 1, 2015.

**ANSWER:**    Bayview states that Plaintiff's allegations in paragraph 23 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

24.     The $1,989.76 monthly payment included $1,081.09 for principal and interest, and $908.67 for escrow (real estate taxes and insurance).  *Id.*

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 24 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

25.     Yousef executed the permanent loan modification and proceeded to make the monthly payments beginning for February 2015.  The mortgage loan was permanently modified.  *Id.*

**ANSWER:**     Admit.

26.     Yousef proceeded to make all required monthly loan modification payments to Bayview.

**ANSWER:**     Deny.

27.     In fact, Yousef overpaid the monthly modification payments by tendering $2,000.00 to Bayview each month.

**ANSWER:**     Deny.

28.     From February 2015 to August 2016, every payment was accepted by Bayview, seemingly without issue.

**ANSWER:**     Bayview admits that from February 2015 to August 2016, every payment was accepted by Bayview, but denies the remaining allegations.

29.     On July 28, 2016, Bayview sent Yousef a notice of servicing transfer, informing Yousef that servicing rights would transfer from Bayview to BANA on August 16, 2016.

**ANSWER:**     Admit.

30. On July 28, 2016, Bayview sent Yousef a monthly mortgage statement. The statement confirmed that Yousef was current with his monthly payment obligations and fully paid through August 2016 (Yousef made the August 2016 monthly payment on July 27, 2016).

**ANSWER:** Bayview admits that it sent a monthly mortgage statement to Plaintiff. Bayview states that Plaintiff's remaining allegations in paragraph 30 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

31. There were no outstanding fees or charges owed, and the next payment was due for September 1, 2016.

**ANSWER:** Bayview admits the July 28, 2016 statement showed the next payment due was September 1, 2016. Bayview states that Plaintiff's remaining allegations in paragraph 31 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

**B. August 16, 2016 Servicing Transfer to Defendant BANA**

32. Immediately upon the servicing transfer from Bayview, BANA treated the loan as if it was in "default."

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and, therefore, denies them.

33. On September 28, 2016, BANA sent Yousef a notice of monthly payment increases (of approximately $1,675) beginning November 1, 2016.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and, therefore, denies them.

34. The payment increase was based upon BANA's claimed "escrow shortage" in the amount of "$14,454.19."

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and, therefore, denies them.

35. BANA attempted to "spread" the "$14,454.19 escrow shortage" over 12 months, increasing Yousef's monthly payment from $1,989.76 to $3,663.92. *Id*.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 and, therefore, denies them.

36. The amount for principal and interest ($1,081.09) did not change, but the monthly allocation for escrow increased by $1,674.16 (from $908.67 to $2,582.83). *Id.*

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 and, therefore, denies them.

37. Yousef continued to make his actual loan modification payment ($1,989.76) to BANA each month in the amount in the amount of $2,000.00.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and, therefore, denies them.

38. BANA proceeded to send Yousef correspondence seeking to collect the increased payment of $3,663.92 each month. BANA claimed a default and threatened foreclosure if Yousef did not make the increased payment.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 and, therefore, denies them.

### C. RESPA Notice of Error and Request for Information to BANA

39. On November 21, 2016, Yousef sent BANA a RESPA Notice of Error and Request for Information ("BANA RFI") seeking information related to the payment increase, the alleged escrow shortage, and to dispute BANA's servicing of the mortgage loan account.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 and, therefore, denies them.

40. Specifically, Yousef notified BANA that he had made all of his payments on time and that BANA failed to account for his payments, improperly placing his account in default. Yousef requested that BANA correct the servicing errors, conduct an investigation, and make corrections to Yousef's account.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 and, therefore, denies them.

41. Yousef also requested, *inter alia*, copies of the payment/transactional history, escrow history, and any correspondence BANA claimed to have sent to Yousef. *Id.*

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 and, therefore, denies them.

42. BANA did not respond to Yousef's RFI/NOE at any time or provide the requested documentation.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and, therefore, denies them.

43. On December 16, 2016, BANA sent Yousef a Notice of Intent to Accelerate, claiming a substantial default and threatening acceleration of the loan, foreclosure, and sale of Yousef's family home if $7,327.84 was not paid by January 25, 2017.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 and, therefore, denies them.

44. Also on December 16, 2016, BANA sent Yousef a mortgage statement claiming that Yousef was in default and owed $8,991.76.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and, therefore, denies them.

45. These correspondences were sent directly Yousef, even though BANA knew that Yousef was represented by an attorney.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 and, therefore, denies them.

46. Yousef continued to make – and BANA continued to accept – the true mortgage payment ($1,989.76) every month in the amount of $2,000.00.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 and, therefore, denies them.

47. However, BANA stole Yousef's payments and charged Yousef for "default" related fees and charges as if payments were not made and accepted.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 and, therefore, denies them.

48. Yousef made all required monthly payments for principal, interest, and escrow in full.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and, therefore, denies them.

49. BANA accepted seven monthly payments from Yousef totaling $14,000.00 during the time BANA serviced mortgage account, with approximately $7,000.00 allocated to escrow during that time period.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and, therefore, denies them.

50. However, BANA sent Yousef a "Statement of Escrow Account Activity," claiming that only "$2,582.83 in total was paid [for Yousef's] escrow account" from "November 2016 through April 2017."

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and, therefore, denies them.

51. Further, BANA serviced the loan from August 16, 2016 through May 16, 2017, not November 2016 to April 2017 as claimed in the letter.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 and, therefore, denies them.

**D. Servicing Transfer to Defendant Bayview**

52. On February 24, 2017, BANA sent Yousef a notice of servicing transfer informing Yousef that servicing rights would transfer from BANA to Bayview on March 16, 2017.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 and, therefore, denies them.

53. BANA transferred servicing rights to the loan back to Bayview, leaving a "default" of over $14,000.00.

**ANSWER:** Bayview admits that at the time BANA transferred servicing to Bayview the Plaintiff's default was over $14,000.00; denies any remaining allegations.

54. Bayview immediately treated the loan as past due and in default.

**ANSWER:** Bayview states that Plaintiff's allegations in paragraph 54 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

55. Bayview claimed that Yousef was in default, threatened acceleration, foreclosure, and sale of Yousef's family home if $14,024.52 was not tendered in 30 days.

**ANSWER:** Bayview admits that it sent a letter titled, Notice Of Default And Intent To Accelerate, to the Plaintiff, dated April 19, 2017, stating the amount required to cure the default was $14,024.52. Bayview denies any allegations in paragraph 55 inconsistent with its admission in paragraph 55.

56. On May 16, 2017, Bayview sent Yousef a statement claiming that he was in default, was due for January 2017 installment, and demanded $22,035.52 to bring the loan current.

**ANSWER:** Deny.

### E. RESPA Notice of Error and Request

57. On June 5, 2017, Yousef sent Bayview a RESPA Notice of Error and Request for Information ("Bayview RFI"), seeking information related to the substantial payment increase, the alleged escrow shortage, and to dispute Bayview's servicing of the loan account.

**ANSWER:** Bayview admits that a letter dated June 5, 2017, was received from Plaintiff's counsel with the subject RESPA Notice of Error and Request for Information (hereinafter referred to as "Bayview RFI"). Bayview states that Plaintiff's remaining allegations in paragraph 57 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

58. Yousef notified Bayview that all monthly mortgage payments were made, that Bayview failed to properly account for his payments, and that Yousef was neither in default nor owed any escrow shortage. Yousef requested that Bayview correct the servicing errors identified, conduct an investigation, and make corrections to Yousef's account.

**ANSWER:** Bayview states that Plaintiff's allegations in paragraph 58 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

59. Yousef requested, *inter alia*, copies of the complete loan file, including the escrow account history, the payment/transactional history, and any notices or correspondence sent to Yousef. *Id.* Yousef attached all relevant documents to the Bayview RFI/NOE.

**ANSWER:** Bayview states that Plaintiff's allegations in paragraph 59 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

60. Bayview received Yousef's NOE and RFI on June 12, 2017.

**ANSWER:** Bayview admits it received the Bayview RFI on June 12, 2017. Bayview denies any allegations in paragraph 60 inconsistent with its admission in paragraph 60.

61. Bayview sent a response, but did not conduct an investigation, address Yousef's specific disputes, or correct the account.

**ANSWER:** Bayview admits it sent a response to the Bayview RFI. Bayview denies any remaining allegations in paragraph 61.

62. Bayview did not perform any investigation, provide any explanation, make any corrections to the account, or provide the information requested by Yousef.

**ANSWER:** Deny.

**F. Dispute Letter & Foreclosure**

63.     On July 28, 2017, Bayview, through its attorneys Wirbicki (Bayview's foreclosure attorneys) sent Yousef a notice of foreclosure demanding $387,662.97 and threatening foreclosure if that amount was not paid in 30 days.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 and, therefore, denies them.

64.     The notice identified Bank of New York Mellon f/k/a The Bank of New York as Trustee (CWALT 2005-06CB) as the owner of the subject loan.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 and, therefore, denies them.

65.     On August 10, 2017, Yousef (through the undersigned attorneys) sent a dispute letter to Wirbicki requesting verification of the debt.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 and, therefore, denies them.

66.     Wirbicki acknowledged receipt of Yousef's dispute letter.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 and, therefore, denies them.

67.     However, Wirbicki did not respond to Yousef's August 10, 2017 dispute letter or verify the debt.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 and, therefore, denies them.

68.     Instead, on September 12, 2017, Wirbicki filed a foreclosure complaint against Yousef and the subject property in the case known as *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee (CWALT 2005-06CB) v. Yousef, et al*, 17 CH 12343 (Cook County).

**ANSWER:**  Bayview admits that a foreclosure complaint, captioned: The Bank of New York Mellon FKA The Bank of New York, as Trustee (CWALT 2005-06CB) v. Yousef, *et al.*, case number 17 CH 12343, was filed in the Circuit Court of Cook County, Illinois on September 12, 2017, by Wirbicki. Bayview denies any allegations in paragraph 68 that are inconsistent with its admission in paragraph 68.

69.  The foreclosure complaint alleged a default date of January 1, 2017 and an unpaid balance of $340,501.86.

**ANSWER:**  Bayview states that Plaintiff's allegations in paragraph 69 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

### G. Payment History/Accounting

70.  From February 2015 through August 2017, Yousef has paid all amount due under the loan modification, including for taxes and insurance, totaling $62, 110.24.

**ANSWER:**  Deny.

71.  From February 2015 through August 2017, $33,513.79 was owed for principal and interest ($1,081.09 x 31 months).

**ANSWER:**  Bayview states that Plaintiff's allegations in paragraph 71 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

72.  From February 2015 through August 2017, Yousef paid $28,596.45 ($62,110.24 - $33,513.79) for escrow.

**ANSWER:**  Deny.

73.  Including the three trial payments of $2,989.76 (November 2014, December 2014, and January 2015), an additional ~$3,200 was paid for principal and interest and ~$2,700 for escrow.

**ANSWER:**  Bayview states that Plaintiff's allegations in paragraph 73 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

74.     Notwithstanding Defendants' claims of a substantial default, Yousef paid all amounts due for principal, interest, and escrow.

**ANSWER:**     Bayview admits claim of a substantial default by the Plaintiff. Bayview denies the remaining allegations in paragraph 74.

75.     Thereafter, Bayview began rejecting Yousef's proper mortgage payment each month.

**ANSWER:**     Deny.

76.     Yousef has since set up a "side account" where all monthly payments due (or rejected) on the mortgage account are "escrowed" for purposes of honoring the loan modification contract.

**ANSWER:**     Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 and, therefore, denies them.

### H. Damages

77.     Yousef has suffered damages proximately caused by Defendants' conduct, including:

i.      Emotional distress, stress, anxiety, and pain and suffering;

ii.     Placing his life on hold to resolve his mortgage issues with Bayview and BANA;

iii.    Loss of payments made for the improper escrow increase;

iv.     Threats of foreclosure and exorbitant amounts for a payment "default;"

v.      Loss of time and resources to dispute the wrongful servicing, make oral and written disputes, pay postage, and enforce the terms of the loan modification;

vi.     Attorney fees and postage to send the BANA and Bayview NOE/RFI to dispute the payment increase;

vii.    Interest, default charges, escrow charges, and fees that have been wrongfully added to Yousef's loan balance;

viii.   Public humiliation and loss of credit worthiness; and

ix.   Attorney's fees and costs to defend the improperly filed state foreclosure lawsuit.

**ANSWER:**   Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 and, therefore, denies them.

78.   Defendants' actions were the proximate cause of damages to Yousef that include those set forth above, the misapplication of payments, Yousef living in a perpetual state of "default," and having to pay more for escrow than is actually owed.

**ANSWER:**   Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 and, therefore, denies them.

## COUNT I – BREACH OF CONTRACT
### (AGAINST BANA AND BAYVIEW)

79.   Yousef repeats and realleges all prior paragraphs as if fully set forth herein.

**ANSWER:**   Bayview restates its responses to all prior paragraphs of the Plaintiff's Complaint, as though fully stated herein.

80.   Yousef has a valid and enforceable loan modification contract with BANA and Bayview (the "servicers") as the servicers of the subject loan.

**ANSWER:**   Bayview states that Plaintiff's allegations in paragraph 80 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

81.   Yousef fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

**ANSWER:**   Deny.

82.   The Servicers breached the loan modification contract by:

i.   misapplying Yousef's principal, interest, and escrow payments;

ii.   rejecting Yousef's payments;

iii.   threatening a foreclosure when Yousef was contractually current with  his monthly payments;

iv.    treating the loan as if it were "default" when Yousef was contractually current;

v.    failing to honor the existence of the payment terms of the loan modification;

vi.    assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modification;

vii.    charging Yousef's escrow account about the limits allowed by the mortgage contract of the 1/6th cushion under RESPA;

viii.    imposing an "escrow shortage" when no shortage existed;

ix.    failing to provide Yousef with accurate account information or accurately respond to Yousef's correspondence and other disputes; and

x.    failing to conduct its affairs in good faith.

**ANSWER:**    Deny.

83.    Yousef suffered damages as set forth in paragraphs 77 and 78 that were proximately caused by the breach of contract.

**ANSWER:**    Bayview denies any allegation of breach of contract. Bayview is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 83 and, therefore, denies them.

WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

a.    find that Defendants materially breached the mortgage contract;

b.    award Yousef his actual damages to be proven at train; and

c.    award any other relief this honorable Court deems equitable and just.

**ANSWER:**    Bayview denies that Plaintiff is entitled to judgment or any relief against Bayview or that Bayview is liable to the Plaintiff in any manner whatsoever.

## COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST BAYVIEW)

84.    Yousef restates and realleges all prior paragraphs as if fully set forth herein.

**ANSWER:**    Bayview restates its responses to all prior paragraphs of the Plaintiff's Complaint, as though fully stated herein.

85.     Yousef is a consumer under 15 U.S.C. § 1692a(3), as the subject loan was extended on Yousef's primary residence and was strictly for personal, family, and household purposes.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 85 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

86.     The subject loan and the authorized fees qualify as "debts" under $ 1692a(5).

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 86 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

### A. <u>Bayview is a Debt Collector</u>

87.     Bayview qualifies as a "debt collector" under § 1692a(6) because (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, (c) it regularly collect debts owed to another party, and (d) it treated the subject loan in default when it acquired servicing rights.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 87 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

88.     The principal purpose of Bayview's business is the collection of debts.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 88 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

89.     Bayview regularly collects consumer debts on behalf of third-party owners and creditors, through the use of the mails, telephones, and instrumentalities of interstate commerce.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 89 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

90.     On March 16, 2017, Bayview obtained servicing rights to the subject loan.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 90 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

91.     At the time of the transfer, Bayview treated the subject debt as if it were in default.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 91 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

92.     At the time of the transfer through today, Bayview was servicing the subject debt on behalf of the third party "Bank of New York Mellon FKA The Bank of New York as Trustee (CWALT 2005-06CB).

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 92 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations. Bayview admits that it is the servicer for "The Bank of New York Mellon FKA The Bank of New York, as Trustee (CWALT 2005-06CB)".

### B. Violation of §§ 1692e, e(2), e(5), & e(10), and §§ 1692f & f(1)

93.     In its attempts to collect a debt from Yousef, Bayview employed false, deceptive, misleading, unfair and unconscionable conduct by:

  i.    misrepresenting the character, amount, and legal status of the subject loan in statements and notices, including a "default" amount over $22,000.00;

  ii.   misrepresenting and assessing wrongful "default" related fees and attempting to collect those amounts – in contravention of the loan modification – when collection of those amounts was not authorized by contract or law;

  iii.  threatening default and foreclosure, and seeking to collect an "escrow shortage" at a time when Bayview was not authorized to do so by contract or law;

  iv.   threatening and asserting a right to accelerate the debt and proceed with foreclosure when no such right existed; and

  v.    falsely promising Yousef that it would implement the loan modification; and

  vi.   refusing to accurately communicate with Yousef or respond to his inquires.

**ANSWER:** Deny.

94.     Yousef suffered damages proximately caused by Bayview's violations of the FDCPA, including those set forth in paragraphs 77 to 78 above.

**ANSWER:**     Bayview denies it violated the FDCPA. Bayview is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 94 and, therefore, denies them.

WHEREFORE, Plaintiff NAZMI YOUSEF requests that his Honorable Court:

    a.   enter judgment in their favor and against Bayview;

    b.   award Yousef statutory and actual damages in an amount determined at trial;

    c.   award Yousef costs and reasonable attorney fees under 15 U.S.C. §1692k; and

    d.   award any other relief this Honorable Court deems equitable and just.

**ANSWER:**     Bayview denies that Plaintiff is entitled to judgment or any relief against Bayview or that Bayview is liable to the Plaintiff in any manner whatsoever.

## COUNT III – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST WIRBICKI)

95.     Yousef restates and realleges all prior paragraphs as if fully set forth herein.

**ANSWER:**     Bayview restates its responses to all prior paragraphs of the Plaintiff's Complaint, as though fully stated herein.

### A. Wirbicki is a Debt Collector

96.     Wirbicki qualifies as a "debt collector" under § 1692a(6) because (a) it regularly collects debts and uses the mail or telephones to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, (c) it regularly collect debts owed to another party, and (d) it treated the subject loan in default when it acquired servicing rights.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 96 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

97. The principal purpose of Wirbicki's business is the collection of debts.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97 and, therefore, denies them.

98. Wirbicki regularly collects consumer debts on behalf of third-party creditors, through the use of the mails, telephones, and instrumentalities of interstate commerce.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 and, therefore, denies them.

99. Wirbicki regularly collects consumer debts on behalf of third-party owners and creditors, through the use of the mails, telephones, and instrumentalities of interstate commerce.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 and, therefore, denies them.

100. Wirbicki is seeking to collect the subject debt on behalf of the third party "Bank of New York Mellon FKA The Bank of New York as Trustee (CWALT 2005-06CB)" for purposes of the state foreclosure action.

**ANSWER:** Bayview states that Plaintiff's allegations in paragraph 100 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

101. At all times, Wirbicki treated the subject debt as if it were in default.

**ANSWER:** Bayview states that Plaintiff's allegations in paragraph 101 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

### B. Violation of §§ 1692e, e(2), e(5), & e(10), and §§ 1692f & f(1)

102. In its attempts to collect a debt from Yousef, Wirbicki employed false, deceptive, misleading, unfair and unconscionable conduct by:

    i. using false representation and deceptive means to collect or attempt to collect the subject loan and foreclosure of the property (§ 1692e);

    ii. Falsely representing the character, amount, and legal status of the subject loan and mortgage (§ 1692e(2));

     iii.    Filing foreclosure when foreclosure could not legally occur (§ 1692e(5));

     iv.    Falsely threatening a foreclosure sale of the property (§ 1692e(8));

     v.    Improperly adding legal fees, foreclosure charges, and attorney's fees (including estimated fees) to Yousef's account (§§ 1692e(8), 1692e(10), 1692f(1)); and

     vi.    Using unfair and unconscionable means to attempt to collect a debt when collection was not authorized by law (§ 1692f & f(1)).

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102 and, therefore, denies them.

103.    Wirbicki's claims that it could foreclose on Yousef and the subject property were misstatements of both fact and law.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 and, therefore, denies them.

104.    Wirbicki's conduct was employed to induce Yousef to pay the amount claimed or be subject to foreclosure of their family home.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 and, therefore, denies them.

### C. <u>Violation of § 1692g(b)</u>

105.    On July 28, 2017, Wirbicki sent its initial communication and debt validation notice to Yousef pursuant to FDCPA § 1692g(b) stating that Yousef had 30-days to dispute the debt.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 and, therefore, denies them.

106.    On August 10, 2017, Yousef sent a dispute letter to Wirbicki via fax and USPS.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106 and, therefore, denies them.

107.    On August 10, 2017, Wirbicki acknowledged receipt of Yousef's dispute letter.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 and, therefore, denies them.

108.    Wirbicki never verified the debt in response to Yousef' dispute letter.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 and, therefore, denies them.

109.    However, Wirbicki proceed with debt collection activity.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 and, therefore, denies them.

**D. Violation of § 1692c**

110.    After Wirbicki was notified that Yousef was represented by the undersigned counsel on August 10, 2017, Wirbicki continued to communicate with Yousef directly for the purpose of debt collection, in violation of § 1692c.

**ANSWER:**    Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 and, therefore, denies them.

111.    Yousef suffered damages proximately caused by Bayview's violations of the FDCPA, including those set forth in paragraph 77 to 78 above.

**ANSWER:**    Bayview denies violating the FDCPA. Bayview is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111 and, therefore, denies them.

WHEREFORE, Plaintiff NAZMI YOUSEF request that this Honorable Court:

e.    enter judgment in favor and against Wirbicki;

f.    award Yousef statutory and actual damages in an amount determined at trial;

g.    award Yousef costs and reasonable attorney fees under 15 U.S.C. §1692k; and

h.    award any other relief this Honorable Court deems equitable and just.

**ANSWER:**    To the extent the allegations in this request for relief are directed towards Bayview, Bayview denies that Plaintiff is entitled to judgment or any relief against Bayview or that Bayview is liable to the Plaintiff in any manner whatsoever.

**COUNT IV – VIOLATION OF ILLINOIS**
**CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(AGAINST BANA AND BAYVIEW)**

112.     Yousef restates and realleges all prior paragraphs as if fully set forth herein.

**ANSWER:**     Bayview restates its responses to all prior paragraphs of the Plaintiff's Complaint, as though fully stated herein.

113.     The Servicers violated ICFA by employing unfair and deceptive acts and practices with dealing with Yousef.

**ANSWER:**     Deny.

114.     Yousef is a "consumer" and "person." *See* 810 ILCS 505/1, 505/2.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 114 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

115.     The acts and practices occurred in the course of conduct involving trade or commerce.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 115 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

116.     The Servicers made outright unfair and deceptive representations to Yousef as to the status the modification and escrow, amounts owed, the status of the loan, how Yousef *should* act, and their actual treatment of this account internally compared to its representations to Yousef.

**ANSWER:**     Deny.

117.     It was unfair and deceptive for the Servicers to:

   i.     ignore the loan modification and Yousef's true account history;

   ii.     falsely claim that they could declare the loan in default and file foreclosure, when no such right existed;

iii. send Yousef notices with false and misleading information, including that Yousef's monthly payments were insufficient to pay principal, interest, and escrow;

iv. falsely claim that Yousef had an escrow shortage;

v. fail to independently verify amounts due for escrow upon transfer of the subject loan account; and

vi. misrepresent "default" related fees and charges on a loan that was not in default.

**ANSWER:** Deny.

118. It was unfair for the Servicers to refuse to provide any explanation or basis for its escrow shortage and payment increase.

**ANSWER:** Deny.

119. Yousef incorporates herein the unfair and deceptive conduct from Count II above.

**ANSWER:** Bayview incorporates and restates its responses to Count II, as though fully stated herein.

### a. Public Policy, Immoral Actions, and Substantial Injury to Consumers

120. The Servicers' conduct offends public policy as it demonstrates an industry-wide practice of charging illegal fees and escrow charges to a borrower in order to make a profit, forcing borrowers to make loan modification payments without properly crediting the payments, misrepresenting material facts, sending conflicting correspondences, falsely threatening foreclosure, with the intention of ultimately benefiting from the higher payments and foreclosure.

**ANSWER:** Deny.

121. The Servicers' actions cause substantial injury to consumers generally because:

i. consumers reasonably expect that loan servicers will communicate with them truthfully and accurately regarding their account;

ii. consumers reasonably expect that loan servicers will not make false representations or induce payments on false pretenses;

iii. consumers reasonably expect that, if there is a dispute, loan servicers will make honest efforts to resolve the dispute expeditiously, instead of misrepresenting facts of not responding altogether; and

iv. consumers reasonably expect that loan servicers will honor and respect laws related to foreclosures against consumers.

**ANSWER:** Deny.

122. Additionally, consumers do not expect to be blindsided by a notice of default and foreclosure when their accounts are fully current.

**ANSWER:** Bayview is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122 and, therefore, denies them.

123. Yousef could not avoid these immoral undertakings because the Servicers would not accurately communicate with him. Yousef's inquiries and disputes were never investigated nor adequately answered; the lack of clarity resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true state of his account.

**ANSWER:** Deny.

124. When taken as a whole over the course of a year, the Servicers' conduct was so unethical and unending that Yousef had no choice but to submit.

**ANSWER:** Deny.

125. Yousef had no actual control over (a) his loan modification and escrow payments, (b) whether the Servicers would declare the loan in default and threaten foreclosure; (c) the arbitrary collection attempts; (d) the assessment of default fees and costs; (e) how costs and fees were assessed or applied; (f) how the Servicers truly treated the loan internally; and (g) whether what the Servicers represented was truthful.

**ANSWER:** Deny.

126.     This conduct is part of a pattern and practice of behavior in which the Servicers routinely engage as part of their business model.  It is the Servicers' normal business practice to disregard agreements and state and federal laws and regulations, and then misstate the nature of outstanding "debts" and amounts "owed" to consumers for its own pecuniary gain.

**ANSWER:**     Deny.

### b. Intent, Reliance, and Punitive Damages

127.     The Servicers' conduct was willful, malicious, and arbitrary.  It was designed to place Yousef's account in a perpetual state of "default," while taking advantage of an emotionally and financially vulnerable borrower trying to save his family home.

**ANSWER:**     Deny.

128.     The Servicers' overall scheme was designed and intended to (a) trick Yousef into making increased payments on the loan modification, (b) induce Yousef to pay tens of thousands of dollars to "reinstate" the loan, and (c) discourage Yousef from continuing to fight for his home and eventually "give up."

**ANSWER:**     Deny.

129.     The Servicers' communications were intentionally confusing, misleading, and designed to keep Yousef in a state of confusion while profiting from his payments, with the ultimate goal of selling his home at a foreclosure auction.

**ANSWER:**     Deny.

130.     Yousef suffered damages as set forth in paragraphs 78 through 79 that were proximately caused by defendants' conduct in violation of the ICFA.

**ANSWER:**   Bayview denies it violated the ICFA. Bayview is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 130 and, therefore, denies them.

131.   An award of punitive damages is appropriate because the Servicers' conduct was outrageous, willful, and wanton, and showed a reckless disregard for the rights of Yousef over the course of several years. Additionally, when Yousef objected, the Servicers attempted to silence him by falsely threatening foreclosure and demanding "reinstatement."

**ANSWER:**   Bayview denies that Plaintiff is entitled to judgment or any relief against Bayview or that Bayview is liable to the Plaintiff in any manner whatsoever. Bayview denies the remaining allegations in paragraph 131.

WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

    a.  enter judgment in Yousef's favor and against BANA and Bayview;

    b.  award Yousef actual and punitive damages in an amount to be determined at trial;

    c.  award Yousef costs and reasonable attorney fees under 815 ILCS 505/10a(c).

**ANSWER:**   Bayview denies that Plaintiff is entitled to judgment or any relief against Bayview or that Bayview is liable to the Plaintiff in any manner whatsoever.

## COUNT V- VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
## (AGAINST BANA AND BAYVIEW)

132.   Yousef repeats and realleges all prior paragraphs as if fully set forth herein.

**ANSWER:**   Bayview restates its responses to all prior paragraphs of the Plaintiff's Complaint, as though fully stated herein.

133.   The subject loan is a "federally related mortgage" under RESPA and 12 C.F.R. 1024.2.

**ANSWER:**   Bayview states that Plaintiff's allegations in paragraph 133 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

134.     BANA and Bayview both qualify as "servicers" under RESPA § 2605(i)(2) and 12 C.F.R. 1024.2.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 134 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

### A. Violation of §§ 2605(e)(1)(A), (e)(2), & (k) and 12 C.F.R. 1024.35(e)

135.     RESPA § 2605(e)(2) and 12 C.F.R. 1024,35(e)(5) requires a loan servicer, within 30 days of receipt of a RFI/NOE, to (i) make corrections to the account and provide the borrower a written notice; or (ii) conduct an investigation and provide the borrower a written explanation as to why the servicer believes its servicing is correct; or (iii) conduct an investigation and provide the borrower a written explanation as to why the requested information is not available.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 135 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

136.     Any written response <u>must</u> include the name and telephone number of a representative of the loan servicer who can provide assistance to the borrower.

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 136 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

137.     Additionally, a servicer must acknowledge in writing receipt of any NOE/RFI from a borrower with five days.  12 U.S.C. § 2605(e)(1)(A)l 12 C.F.R. 1024.35(d).

**ANSWER:**     Bayview states that Plaintiff's allegations in paragraph 137 are legal conclusions which are not subject to denial or admission; to the extent an answer is required Bayview denies these allegations.

138.     With respect to the RFIs and NOEs sent by Yousef, the Servicers did not acknowledge receipt of or respond to in any fashion, in violation of RESPA § 2605(e)(1)(A); 12 C.F.R. 1024.35(d).

**ANSWER:**   Deny.

139.   With respect to the RFIs and NOEs sent by Yousef, the Servicers (a) did not make corrections to the account, (b) did not conduct a reasonable investigation, and (c) did not respond to Yousef in one of the three months allowed under RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3).

**ANSWER:**   Deny.

140.   The Servicers did not provide Yousef with a name and phone number of a representative who would provide assistance to Yousef.

**ANSWER:**   Deny.

141.   The Servicers' failure to comply with RESPA is a part of a pattern of practice of non-compliance with the provisions of RESPA.

**ANSWER:**   Deny.

142.   Yousef suffered damages proximately caused by the Servicers' conduct of as set forth in paragraphs 77 to 78 above.

**ANSWER:**   Bayview denies it violated the RESPA. Bayview is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 142 and, therefore, denies them.

143.   The Servicers' failure to comply with RESPA is part of a pattern of practice on non-compliance with the provisions of RESPA.

**ANSWER:**   Deny.

WHEREFORE, Plaintiff NAZMI YOUSEF requests that this Honorable Court:

a.   grant judgment in Yousef's favor and against BANA and Bayview;

b.   award Yousef actual and additional damages pursuant to RESPA § 2605(f);

c.   award Yousef reasonable attorney's fees and costs pursuant to RESPA § 2605(f); and

d.  award any other relief this Honorable Court deems equitable and just.

**ANSWER:**    Bayview denies that Plaintiff is entitled to judgment or any relief against Bayview or that Bayview is liable to the Plaintiff in any manner whatsoever.

## AFFIRMATIVE DEFENSES

Bayview reasserts and incorporates, as if fully set forth herein, its responses to the Complaint above and further asserts the following defenses without assuming the burden of proof where it otherwise rests with the Plaintiff, as follows:

### FIRST DEFENSE
### (FAILURE TO STATE A CLAIM)

Plaintiff's Complaint fails to state a claim against Bayview upon which relief can be granted.

### SECOND DEFENSE
### (BONA FIDE ERROR)

Any violation of law stated in the Complaint, which Bayview continues to deny, occurred as a result of a bona fide error notwithstanding the maintenance of procedures by Bayview that were reasonably adopted and implemented, with due care, to avoid such error.

### THIRD DEFENSE
### (FAILURE TO MITIGATE DAMAGES)

Plaintiff has failed to mitigate his damages.

### FOURTH DEFENSE
### (ESTOPPEL)

Any damages which Plaintiff may have suffered, which Bayview continues to deny, were the direct and proximate result of the conduct of Plaintiff. Therefore, Plaintiff is estopped and barred from recovery of any damages.

### FIFTH DEFENSE
### (INTERVENING CAUSES)

Plaintiff's alleged injuries were not caused by Bayview, but by independent intervening causes which had no relation in fact to any conduct of Bayview.

## SIXTH DEFENSE
## (NO PUNITIVE/ STATUTORY DAMAGE)

Plaintiff cannot meet the requirements in order to recover punitive or statutory damages.

Bayview reserves the right to assert additional defenses that it learns through the course of discovery.

WHEREFORE, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Bayview prays that Plaintiff's Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiff, and that Bayview recover such other and additional relief as the Court deems just and appropriate.

Respectfully submitted,

BAYVIEW LOAN SERVICING, LLC

/s/ Solomon Maman_____
One of its Attorneys

James V. Noonan #6200366
Solomon Maman #6299407
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois 60603
312-431-1455
jnoonan@noonanandlieberman.com
smaman@noonanandlieberman.com

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| NAZMI A. YOUSEF, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:18-cv-01103 |
| | ) | |
| BANK OF AMERICA, N.A. , | ) | |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| WIRBICKI LAW GROUP, LLC | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2018 a copy of the foregoing DEFENDANT BAYVIEW LOAN SERVICING, LLC ANSWER AND AFFIRMATIVE DEFENSES was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

> Ross M. Zambon
> Zambon Law Ltd.
> Suliman Law Group, Ltd
> 2500 S. Highland Ave., Suite 200
> Lombard, IL 60148

Respectfully submitted,
BAYVIEW LOAN SERVICING, LLC


/s/ Solomon Maman_____
One of its Attorneys

James V. Noonan #6200366
Solomon Maman #6299407
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois 60603
312-431-1455
jnoonan@noonanandlieberman.com
smaman@noonanandlieberman.com
intake@noonanandlieberman.com